# In the
# United States Court of Appeals
## For the Second Circuit

_____

August Term 2023
Argued: March 12, 2024
Decided: July 11, 2024

Docket No. 23-776

MANOUCHEKA FRANCOIS,

*Plaintiff-Appellant*,

v.

METRO-NORTH COMMUTER RAILROAD COMPANY,

*Defendant-Third-Party-Plaintiff-Appellee,*

HUDSON VALLEY TRANSPORTATION, MICHAEL T. CELLANTE,

*Third-Party-Defendants-Appellees.*[*]

_____

Before:     CABRANES, WESLEY, and LOHIER, *Circuit Judges*.

_____

    Manoucheka Francois appeals from a grant of summary judgment in favor of her employer, Metro-North Commuter Railroad Company, on claims arising under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60. Metro-North hired a taxi to transport Francois back to headquarters after her shift as a train conductor

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

had ended.  The taxi driver had consumed four to five shots of alcohol before he picked Francois up.  The taxi crashed; Francois was injured.

We conclude that Francois has not raised triable issues of fact regarding Metro-North's direct liability (for negligently hiring the impaired taxi driver) but has raised triable issues of fact regarding Metro-North's vicarious liability (for the impaired taxi driver's negligence).  We therefore **AFFIRM** in part, **VACATE** in part, and **REMAND** for further proceedings.

————————

BRIAN J. ISAAC, Pollack, Pollack, Isaac & DeCicco, LLP, New York, NY (Marc T. Wietzke, Flynn & Wietzke, PC, Garden City, NY, *on the brief*), *for Plaintiff-Appellant*.

BECK S. FINEMAN, Ryan Ryan Deluca LLP, Bridgeport, CT (Alan Muraidekh, Metro-North Rail Road, New York, NY, *on the brief*), *for Defendant-Third-Party-Plaintiff-Appellee*.

Suzanne M. Halbardier, Barry McTiernan & Moore LLC, New York, NY, *for Third-Party-Defendants-Appellees*.

————————

PER CURIAM:

Manoucheka Francois was injured in a car crash.  She was riding in a taxi hired by her employer, Metro-North Commuter Railroad Company, to transport Francois back to her work headquarters after her shift as a train conductor ended.  Unbeknownst to Metro-North or Francois, the taxi driver had downed four to five shots of alcohol before he picked Francois up.

2

Francois sued Metro-North under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60, claiming that Metro-North bore direct liability (for negligently hiring the taxi driver) and vicarious liability (on behalf the taxi driver, as its agent) for her injuries. The United States District Court for the Southern District of New York (Carter, *J.*) concluded that no reasonable juror could find Metro-North liable under either theory; it granted summary judgment in favor of Metro-North.

We affirm as to Metro-North's direct liability. No reasonable jury could find that Metro-North itself acted negligently by hiring the taxi driver to transport Francois back to headquarters. Francois introduced no evidence suggesting that Metro-North had reason to foresee that the taxi driver would drink alcohol before picking her up.

We vacate and remand as to Metro-North's vicarious liability. The district court concluded that the taxi driver removed himself from the scope of his agency by drinking alcohol. In our view, the scope of the driver's agency presents a triable issue of fact. A driver who seeks to further his principal's core objective—driving a passenger to her destination—can do so on behalf of his principal even when he does so unsafely. In FELA cases, plaintiffs enjoy a relaxed burden of proof. Courts

3

in such cases must therefore exercise caution before taking issues of agency (and thus liability) away from the jury.

## BACKGROUND

Francois worked as a train conductor for Metro-North. Late one night, after completing the final run of her shift, Metro-North hired a taxi company, Hudson Valley Transportation, to transport Francois from the end of the train line back to her headquarters. The taxi company dispatched a driver, Michael Cellante, to pick Francois up.

When the trip began, Francois had no indication that Cellante had been drinking. But as the taxi proceeded onto the interstate, Francois noticed that Cellante was speeding and losing control of the vehicle. The taxi crashed into a ditch; Francois was injured.

A police officer investigating the accident cited Cellante for driving at an unsafe speed. Cellante, smelling of alcohol, told the officer that he had consumed four to five shots about an hour before he began to drive—and he subsequently failed a sobriety test with a blood alcohol content of 0.10%. Cellante was ultimately convicted of driving while his ability was impaired. *See* N.Y. VEH. & TRAF. LAW § 1192(1).

Francois sued Metro-North for negligence under FELA, a federal statute that makes railroad employers liable for certain of their employees' injuries. Although her complaint alleged a single FELA count, Francois asserted two theories of liability to support that count: First, that Metro-North bore direct liability for negligently hiring an impaired taxi driver to transport its employee; second, that Metro-North bore vicarious liability for the negligent driving of that taxi driver.[1]

The district court, while acknowledging "that it is extremely rare in a FELA case to take the issues of agency or foreseeability away from a jury," granted summary judgment in favor of Metro-North on both theories. *Francois v. Metro-N. Commuter R.R. Co.*, No. 20-CV-4439, 2023 WL 2711434, at *3 (S.D.N.Y. 2023). Regarding direct liability, the district court noted that Francois introduced no evidence that Metro-North could have foreseen that Cellante would drink alcohol before driving Francois. *Id*. Regarding vicarious liability for the actions of Cellante, the district court determined that no reasonable jury could find that Cellante acted as Metro-North's agent by driving under the influence—because Metro-North's "goal of having the plaintiff transported safely from one location to

---

[1] In turn, Metro-North impleaded Hudson Valley Transportation and Cellante, claiming that they were responsible for Francois's injuries.

another is undermined, not furthered, by its agent downing 4 to 5 shots of alcohol one hour before getting behind the wheel." *Id.*

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a district court grants summary judgment for the defendant, we review *de novo*, resolving all ambiguities and drawing all permissible factual inferences in favor of the plaintiff. *See Elliott v. Cartagena*, 84 F.4th 481, 495 (2d Cir. 2023).

Under FELA, a railroad bears liability for injuries to one of its employees stemming from the negligence, "in whole or in part," of another one of the railroad's "officers, agents or employees." 45 U.S.C. § 51. "FELA does not make an employer strictly liable for workplace injuries." *Sinclair v. Long Island R.R.*, 985 F.2d 74, 77 (2d Cir. 1993). Thus "the plaintiff must prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation." *Ojeda v. Metro. Transp. Auth.*, 41 F.4th 56, 63 (2d Cir. 2022) (citation omitted).

All the same, Congress passed FELA to broaden traditional tort remedies against railroad employers. *See Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542–43

(1994); *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561–62 (1987). We have observed that under FELA, a railroad employer "is potentially responsible for risks that would be too remote to support liability under common law." *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 826 (2d Cir. 1994). "[T]here is a considerably more relaxed standard of proof for determining negligence in FELA cases, and a strong federal policy in favor of letting juries decide these cases." *Sinclair*, 985 F.2d at 76–77 (cleaned up). That means the jury's "right to pass upon the question of the employer's liability must be most liberally viewed." *Ojeda*, 41 F.4th at 71 (quoting *Gallose v. Long Island R.R. Co.*, 878 F.2d 80, 84 (2d Cir. 1989)). At the summary judgment stage, a FELA action "must not be dismissed . . . unless there is absolutely no reasonable basis for a jury to find for the plaintiff." *Syverson*, 19 F.3d at 828.

This case presents two theories of FELA liability. Francois argues that Metro-North bears (1) direct liability for negligently hiring an impaired taxi driver, and (2) vicarious liability, also known as respondeat superior, on behalf of its

7

agent,[2] the impaired driver, for that agent's own negligence which caused the accident. The district court properly granted summary judgment to Metro-North as to the first theory, but the second theory warrants a trial.

I. **Direct Liability.**

Francois's theory of direct liability fails because Metro-North had no notice that the taxi driver would decide to drive while impaired. To establish direct liability under FELA, the plaintiff must show that the railroad employer knew or had reason to know of an unsafe condition or that its agent might commit the relevant tort—in other words, what "a reasonably prudent person would anticipate in light of all the surrounding circumstances." *Gallose*, 878 F.2d at 86 (quotation marks and citation omitted).

There is no evidence that Metro-North knew, or should have foreseen, that the taxi driver would drive while impaired. Nothing in the record suggests that drivers dispatched by the taxi company (or indeed, this particular driver) had a

---

[2] We describe the taxi driver as an "agent" rather than an "employee" because Metro-North did not employ the driver. At first glance, the different terms can cause confusion because our FELA caselaw mainly originates from incidents involving negligent employees on a railroad's regular payroll. *See, e.g.*, *Gallose*, 878 F.2d at 83. But for purposes of FELA, the analysis is the same whether the tortfeasor is understood to be an employee or an agent. The statute imposes liability either way. *See* 45 U.S.C. § 51.

8

propensity to drink before driving, or that Metro-North had any reason to suspect that the taxi driver would drive unsafely. Thus, we affirm the district court's decision as it pertains to direct liability.

**II. Vicarious Liability.**

By contrast, we vacate the grant of summary judgment on Francois's theory of vicarious liability. At the outset, we note several concessions by Metro-North that guide our analysis. For one, Metro-North concedes that the taxi driver acted as its agent by driving Francois. And although the taxi company served as an intermediary—it dispatched the taxi driver, Cellante—Metro-North does not argue that the intermediary severs or otherwise affects the agency relationship between Metro-North and Cellante. Finally, Metro-North concedes that Cellante drove negligently.

Still, a railroad is vicariously liable for its agent's negligence only when "the particular act performed negligently was also in the scope" of agency delegated by the railroad. *Id.* at 83 (quotation marks omitted). Vicarious liability asks both whether the act was within the scope of the tortfeasor's delegated agency and whether that act was generally foreseeable to the railroad as the principal. We address each inquiry in turn.

### A. Scope of Agency.

An agent's scope of agency encompasses any acts "within the limits" of the agent's duties that can be construed as "attempting to further" the principal's "interests." *Id.* at 84. Conversely, it does not encompass acts based upon the agent's "own impulse, for his own amusement, and for no purpose of or benefit to the defendant" principal. *Id.* at 83 (quotation marks omitted).

In this case, a reasonable juror could conclude that the taxi driver's core act—taking Francois to her destination—was within his scope of agency. Metro-North had dispatched the driver for this very task. The driver's act of driving his passenger attempted to further the principal's interests; it is precisely what Metro-North hired him to do. He was not taking a joyride with Francois based upon his own impulse or amusement; he picked her up because he intended to get paid for completing the trip—for doing his job.

The district court nevertheless concluded that the taxi driver exceeded his scope of agency by driving while his ability to do so was impaired. We disagree that a prior act of drinking to the point of impairment necessarily removes a driver from the scope of his agency. It simply makes the driver negligent once he gets behind the wheel. Put differently, just because a driver "was intoxicated when

10

driving does not mean that he was acting outside the scope of his [agency], but only that he failed to use reasonable care under the circumstances." *Stephenson v. United States*, 771 F.2d 1105, 1107–08 (7th Cir. 1985). Although the prior act of drinking alcohol was outside the scope of the driver's agency, the subsequent act of driving his taxi while on duty was at least arguably within it. To hold otherwise would conflate scope of agency (driving as a job) with negligence (driving while impaired). If scope of agency and negligence were the same, few principals could face vicarious liability. After all, virtually no agent who acts unsafely and injures someone has benefitted their principal in hindsight. *See Gallose*, 878 F.2d at 84.

This conceptual difference between scope of agency and negligence is confirmed by our precedents. We have "recognize[d] that some acts of an employee even when committed in a state of intoxication may nevertheless be said to be actuated by the interests of the employer." *Cronin v. Hertz Corp.*, 818 F.2d 1064, 1067–68 (2d Cir. 1987). In *Nelson v. American-West African Line, Inc.*, 86 F.2d 730, 732 (2d Cir. 1936) (L. Hand, *J.*), we held that a boatswain on a steamship could act within the scope of his agency by violently rousing a sleeping sailor to begin the sailor's watch, even though the boatswain had returned to the steamship after getting "blind drunk." We reasoned that "the owner had selected" the boatswain

11

"to command" the sailors, despite the boatswain having "made himself incompetent to further the ship's business" by drinking alcohol. *Id.* The shipowner could face vicarious liability because that core act of commanding the sailor was what the shipowner would want the boatswain to do—even if the shipowner would not want him to do so negligently.[3]

Several of our sister Circuits have reached the same conclusion that we do here: driving while impaired does not necessarily remove drivers from the scope of their agency or employment. The Tenth Circuit, for instance, held that a truck driver who had consumed methamphetamine had "resumed her employment as soon as she recommenced driving . . . on the assigned route." *Frederick v. Swift Transp. Co.*, 616 F.3d 1074, 1080 (10th Cir. 2010). The Fourth Circuit, when confronted with a drunk truck driver who caused a traffic collision, reasoned that "drunk or not, an employee behind the wheel and headed toward his assigned destination is about his master's business," and distinguished the case from one where an "employee drank too much at a job-related social function and caused

---

[3] *Nelson* was brought under the Merchant Marine Act of 1920 (also known as the "Jones Act"), ch. 250, 41 Stat. 988 (codified as amended in scattered sections of 46 U.S.C.), "a sister statute to the FELA which incorporates its standards of care, duties, and rules of liability." *Gallose*, 878 F.2d at 83.

an accident on the way home" after work was over. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 330–31 (4th Cir. 1996) (en banc) (quotation marks omitted). And the Seventh Circuit held that a Marine Corps recruiter acted within the scope of employment when he struck someone while drunkenly driving a vehicle back to a government substation, explaining that although the recruiter "may have deviated from the scope of his employment earlier in the evening" by drinking alcohol, "he was, *at the time of the accident*, performing an act that he was directed to do and that was intended to benefit the government." *Stephenson*, 771 F.2d at 1107 (emphasis in original).

True, these cases from our sister circuits derived from various state laws, not FELA. Yet "common-law principles" of vicarious liability "are entitled to great weight in our analysis" because FELA does not preclude cases brought under a theory of respondeat superior. *Gottshall*, 512 U.S. at 544; *see Sobieski v. Ispat Island, Inc.*, 413 F.3d 628, 633–34 (7th Cir. 2005) ("[N]othing in [FELA's] express terms . . . indicates Congress's intent that we set aside common law principles of respondeat superior."). FELA "seeks to provide broad protection for workers employed by railroads engaged in interstate commerce." *Kowalchuck v. Metro. Transp. Auth.*, 94 F.4th 210, 218 (2d Cir. 2024). If the scope of vicarious liability under FELA were

narrower than the scope of vicarious liability under analogous common law, "the plaintiff in an FELA case would have fewer rights than an ordinary tort plaintiff, an unacceptable result." *Lancaster v. Norfolk & W. Ry. Co.*, 773 F.2d 807, 818 (7th Cir. 1985).

In the end, courts are loath to divest the jury of its central role in FELA cases. "Normally, whether an employee is acting within the scope of employment is a question to be resolved by the jury from all the surrounding circumstances." *Goldwater v. Metro-North Commuter R.R.*, 101 F.3d 296, 298 (2d Cir. 1996) (quoting *Gallose*, 878 F.2d at 84). Whether the taxi driver acted within the scope of his agency while driving Francois—and whether and to what extent his impairment affected his agency relationship with Metro-North—are factual questions that the district court should not have resolved at summary judgment.

### B. Foreseeability.

Metro-North also maintains that it could not foresee that the taxi driver would decide to drive while impaired. Foreseeability "is a fact issue, and, as with all factual issues under the FELA, the right of the jury to pass on this issue must be liberally construed." *Syverson*, 19 F.3d at 826 (quoting *Gallose*, 878 F.2d at 85 (brackets omitted)).

14

Again, in terms of direct liability, Francois introduced no evidence that Metro-North had any reason to suspect that the taxi driver would be impaired when it hired him. But in terms of vicarious liability—when the tortfeasor is the taxi driver, rather than Metro-North itself—we ask a broader foreseeability question from the railroad-principal's perspective:

> What is reasonably foreseeable in the context of respondeat superior is quite a different thing from the foreseeable unreasonable risk of harm that spells negligence. When we talk of vicarious liability we are not looking for the employer's fault but rather for risks that may fairly be regarded as typical of or broadly incidental to the enterprise he has undertaken.

*Cronin*, 818 F.2d at 1068 (cleaned up).[4] And we look at "the harm that is likely to flow from the employer's activity despite the reasonable precautions that might be taken." *Id.* In sum, for vicarious liability, courts examine the foreseeability of a general, rather than specific, risk of harm.

Francois has raised a material dispute of fact about whether driving while impaired presents a general risk of harm. Even if Metro-North (or, for that matter, the taxi dispatch company) specifically prohibited its drivers from drinking

---

[4] When it comes to the foreseeability question from the agent's perspective, there is no doubt: a taxi driver who drinks alcohol can plainly foresee the danger that he has created for his passengers.

15

alcohol while on duty, there is a factual dispute whether the risk of a violation was "typical of or broadly incidental to" Metro-North's "enterprise," such as to render Metro-North liable. *Id.* Moreover, there is evidence that the accident could have been caused by the taxi driver's speeding. A driver-agent who speeds—whether drunk or sober—is another general risk that a principal in the transportation business can anticipate. We cannot say there is "absolutely no reasonable basis" for a jury to conclude the same. *Syverson*, 19 F.3d at 828. Given these triable issues of agency and foreseeability, we vacate the district court's decision as it pertains to vicarious liability.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court is **AFFIRMED** as to Francois's direct liability claim, **VACATED** as to Francois's vicarious liability claim, and the case is **REMANDED** for further proceedings consistent with this opinion.